THE STATE OF DELAWARE, upon the relation of ROBERT C. WHITE, Attorney-General, *vs.* JOSEPH HANCOCK, FRANKLIN TEMPLE, WILLIAM W. POWERS, THEODORE TOWNSEND, HENRY REICHARDT, JOHN D. HAWKINS, LUCIUS P. CAMPBELL, E. C. HANCOCK AND HOWARD M. WILKINSON.

*Information— Quo Warranto—Demurrer—Local Action—Pleading —Practice—Evidence—Constitution and Statutes ; Construction of—Corporation—Merger—Jury Trial—Judgment.*

1. An information in the nature of a writ of *quo warranto* is, under the decisions of this State, a local action.

2. The first step in such action is an application for a rule to show cause why leave should not be granted to file the information. (Form of such rule given.)

3. At the hearing on the rule the party asking for it should open and close.

4. *Section 1 of Article 9 of the Constitution* does not prevent the Attorney-General from instituting in this Court proceedings to oust individuals from the exercise of corporate powers.

5. When it is provided that before any organization shall be effected under an act of incorporation at least ten thousand dollars of the capital stock subscriptions therein shall be fully paid in cash, *held* that such cash payment is a condition precedent and must be averred. A condition subsequent need not be averred.

6. It is sufficient if it be averred in the plea that certain persons are officers and directors of a corporation. It is not necessary to set out the manner in which they were elected.

7. What is necessary to be averred in the plea, and with what particularity.

8. When the respondents justify under a charter, the burden is on them to show the incorporation, and they have the right to open and close.

9. Two companies whose charters were granted by the Legislature *prior* to the adoption of the Constitution, but which did not organize till *after*, had the power to merge: *Held* that the creation of a new company, after the adoption of the Constitution, by the merger of said companies, is not within the inhibition of Section 1 of Article 9 of the Constitution, which provides that "No corporation shall hereafter be created, renewed or revived by special act, but only by or under general law."

10. Under the authority in the charter of a corporation "to consolidate or merge with any corporation or corporations heretofore or hereafter created," etc., "the right of merger being hereby conferred upon any company so wishing to consolidate that does not possess it," the company possessing such authority may merge with any other company or companies wishing to so merge.

11. Where an act of incorporation provides "that before any organization shall be effected at least ten thousand dollars of the capital stock subscriptions therein authorized shall be fully paid in cash, such subscriptions must be in writing as provided by the act, and proof thereof by parol will not be permitted to vary such writing.

12. Form of judgment rendered by the Court on the finding of the jury.

(*October 24–December 18, 1899.*)

LORE, C. J., and PENNEWILL and BOYCE, J. J., sitting.

*Robert C. White*, Attorney-General, *Edward Ridgely* and *Henry Ridgely, Jr.*, for the State.

*William S. Hilles* and *Anthony Higgins* for the respondents.

Superior Court, Kent County, October Term, 1899.

INFORMATION in the nature of a writ of *quo warranto*.

Omitting the caption, the information was as follows:

"Kent County, ss.
"Robert C. White, Attorney-General of the State of Delaware, who sues for the said State of Delaware in this behalf, comes here

before the Judges of the Superior Court of the State of Delaware in and for Kent County on this 24th day of October, 1899, at the October Term of said Court, and for the said State of Delaware gives the said Court here to understand and be informed that Joseph Hancock, Franklin Temple, William W. Powers, Theodore Townsend, Henry Reichardt, John D. Hawkins, Lucius P. Campbell, E. C. Hancock and Howard M. Wilkinson, are unlawfully and without any warrant, grant or charter, assuming to act as a corporation under the name of " Delaware Electric Railway Company," and by that name are assuming perpetual succession, and by that name to sue and be sued, plead and be impleaded, answered and be answered unto, defend and be defended in any and all courts and places whatsoever whether in this State or elsewhere in all manner of actions, suits, complaints, pleas, causes, matters and demands whatsoever, and further by that name are assuming the power to purchase, lease, take, hold and own by contract, deed, devise, bequest, gift, assignment, or otherwise, estates real, personal or mixed of every kind, and the same to grant, mortgage, sell, lease, alien, convey and dispose of, and further, to consolidate or merge with any corporation, and to have a common seal, and to make and ordain by-laws, and assume to exercise and enjoy all the franchises incident to a corporation duly incorporated and organized for the purpose of locating, constructing and operating a railway, the cars and carriages of which to be propelled by any motive power other than steam ; and also unlawfully and without the authority of law, and without any warrant, grant or charter assume to exercise the right of eminent domain, and to locate, construct, maintain and operate a railway from a point on the Delaware Bay Shore at or near Woodland Beach in Kent County, State of Delaware, to and into the town of Milford in Kent County aforesaid ; the cars or carriages of which to be propelled by any motive power other than steam, and further unlawfully and without the authority of law and without any warrant, grant or charter assume the right to use the public roads of Kent County, and public bridges over said

roads, and the streets of the town of Dover and the streets of other towns, in the said Kent County, for the purpose of their said railway, and in fact have located a portion of their said railway within the past two months on the State Road immediately south of and near to the town of Dover in Kent County aforesaid, and thereby are obstructing the free use of a portion of the said State Road all of which said liberties, privileges and franchises the said " (same parties as above) " have usurped and still do usurp to the great damage and prejudice of the State of Delaware, whereupon the said Attorney-General prays that the Court do grant a writ of *quo warranto* directed to the said " (same parties as above) " commanding them and each of them that they be and appear in said Court on some day to be named by said Court to show by what warrant or authority they claim to have and exercise the liberties, privileges and franchises aforesaid.

" ROBERT C. WHITE,

" Attorney-General of the State of Delaware."

*Henry Ridgely, Jr.*, on behalf of the State (counsel for the defendants not being present), asked for a rule to show cause why the writ should not issue in pursuance of said information.

LORE, C. J.:—There is only one rule granted. You either file the information without leave or you ask for a rule to show cause why leave should not be granted to file the information. When you have leave to file your information, it is in the nature of a declaration.

*Henry Ridgely, Jr.:*—We ask for a rule to show cause why leave should not be had to file our information.

LORE, C. J.:—Let the rule issue returnable Friday morning, October 27, at 10 o'clock.

The rule issued was in the following form :

"October Term, A. D., 1899.—To wit, October 24, A. D. 1899, upon motion of Henry Ridgely, Jr., Esquire, to the Superior Court of the State of Delaware in and for Kent County, a rule is granted on you" (naming the said defendants) "to appear and be before the Judges of our said Superior Court of the State of Delaware, in and for Kent County, at Dover, on Friday, the 27th day of October, A. D. 1899, at ten o'clock, a. m., to show cause if any you have why leave should not be granted to Robert C. White, Attorney-General of the State of Delaware, to file an information against you" (naming the said defendants) "in the following words and figures, to wit:"

(Omitting the caption the rule was as follows):

"Kent County, ss.

"Robert C. White, Attorney-General of the State of Delaware, who sues for the said State of Delaware in this behalf, comes here before the Judges of the Superior Court of the State of Delaware, in and for Kent County, on this 24th day of October, 1899, at the October Term of said Court, and for the said State of Delaware gives the said Court here to understand and be informed that" (naming the defendants) "are unlawfully and without any warrant, grant or charter assuming to act as a corporation under the name of 'Delaware Electric Railway Company,' and by that name are assuming perpetual succession, and by that name to sue and be sued, plead and be impleaded, answer and be answered unto, defend and be defended in any and all courts and places whatsoever whether in this State or elsewhere, in all manner of actions, suits, complaints, pleas, causes, matters and demands whatsoever, and further by that name are assuming the power to purchase, lease, take, hold and own by contract, deed, devise, bequest, gift, assignment, or otherwise, estates real, personal or mixed of every kind, and the same to grant, mortgage, sell, lease, alien, convey and dispose of, and further to consolidate or merge with any corporation, and to have a common seal, and to make and ordain by-laws, and assume to exercise and enjoy all the franchises incident to a corporation

duly incorporated and organized for the purpose of locating, constructing and operating a railway, the cars and carriages of which to be propelled by any motive power other than steam; and also unlawfully and without the authority of law, and without any warrant, grant or charter, assume to exercise the right of eminent domain and to locate, construct, maintain and operate a railway from a point on the Delaware Bay Shore at or near Woodland Beach, in Kent County, State of Delaware, to and into the town of Milford, in Kent County aforesaid; the cars or carriage of which to be propelled by any motive power other than steam, and further unlawfully and without the authority of law and without any warrant, grant or charter assume the right to use the public roads of Kent County, and public bridges over said roads, and the streets of the town of Dover in Kent County and the streets of other towns in Kent County, for the purpose of their said railway and in fact have located a portion of their said railway within the past two months on the State Road immediately south of and near to the town of Dover aforesaid, and thereby are obstructing the free use of a portion of the said State Road, all of which said liberties, privileges and franchises the said" (naming the defendants) "have usurped and still do usurp to the great damage and prejudice of the State of Delaware, whereupon the said Attorney-General prays that the said Court do grant a writ of *quo warranto* directed to the said" (naming the defendants) "commanding them and each of them that they be and appear in said Court on some day to be named by said Court to show by what warrant or authority they claim to have and exercise the liberties, privileges and franchises aforesaid.

"ROBERT C. WHITE,
"Attorney-General of the State of Delaware."

The rule coming on to be heard, counsel for the respective parties being present, the Court stated that the practice was in such proceedings that the party asking for the rule should open and close.

*Henry Ridgely, Jr.,* for the State:

The jurisdiction of the Superior Court to hear and determine cases like the present one, may be and is founded on three distinct authorities, to wit:

*First.* The authority of the *common law.*

*Second.* The authority of a special *statute* of the State of Delaware.

*Third.* The authority of the *Constitution* of the State of Delaware.

It will scarcely be questioned that any one of the above will be sufficient to give jurisdiction.

We will consider them separately.

*First.* The authority of the common law gives jurisdiction.

That the Superior Court has jurisdiction, if such a proceeding as the present one existed at common law, is settled by *Article 4, Section 6, of the new Constitution,* to wit: "The Superior Court shall have jurisdiction of all causes of a civil nature, real, personal and mixed, at common law, and all other, the jurisdiction and powers vested by the laws of this State in the Superior Court."

That such a proceeding did exist at common law, see the following authorities:

(*a*) *State ex rel. Dunlap vs. Stewart et al., 6 Houst., 359.*

*High's Extraordinary Remedies, Secs. 647, 653, 648 and 609. Short on Extraordinary Remedies (marginal paging) 110, 130, 108—note c.; Thompson on Corporations, Secs. 6,780 and 6,770; State vs. Southern Pacific R. R. Co·, 24 Texas 79, and 80.*

*Second.* That this Court has jurisdiction by authority of *express statute in this State.*

*Section 1* of *Chapter 92* of the *Revised Code* as amended in 1893, *page 697*, provides that,

"The Judges of the Superior Court, or any two of them, shall hold pleas of assize, *scire facias*, replevins, *informations* and actions on penal statutes, and hear and determine all and all matters of pleas, actions, suits and causes, civil, real, personal and mixed, according to the Constitution and laws of this State, as fully and as amply, to all intents and purposes, as the Justices of the King's Bench, common pleas, and exchequer of England, or any of them, may or can do."

That the "*informations*" mentioned in said statute refer to informations in the nature of *quo warranto,* is fully established by the Court in *State ex rel. Dunlap vs. Stewart, 6 Houst., 359, (See page 375 et seq.)*

*Third.* That this Court has jurisdiction by authority of our lately amended Constitution.

*Article 4, Section 7, of our new Constitution, page 24,* provides, that,

"The Superior Court shall have jurisdiction of all causes of a civil nature, real, personal and mixed, at common law, and all other the jurisdiction and powers vested by the laws of this State in the Superior Court."

But it may be contended that the second part of *Article 9, Section 1, page 42 of the amended Constitution,* as to the forfeiture of charters, which provides that,

"The General Assembly shall, by general law, provide for the revocation or forfeiture of the charters of all corporations for the abuse, misuse, or nonuser of their corporate powers, privileges or franchises. Any proceeding for such revocation or forfeiture shall be taken by the Attorney-General, as may be provided by law,"

supersedes *both the old* common law, and statutory power of the Attorney-General to proceed by information in cases like the present, and leaves the courts of this State without jurisdiction in the premises, the General Assembly having failed to obey this mandate of the Constitution to pass a general statute covering cases like the present.

As a complete and final answer to any such contention the following four propositions are respectfully submitted,

(*a*)   That the rational construction of the constitutional provision in question is that which flows from the context. The first part of the said section provides that *no new charters* shall be granted, and *no old charters* be amended, renewed or revived, except by general law. It refers solely and exclusively to new corporations, or to old existing corporations to be amended, renewed or revived. It has nothing whatever to do or to say regarding old corporations *not amended, renewed or revived* under such general law.

(*b*)   That the said constitutional provision relative to forfeiture of charters, can by its plain words and intendment relate only to the forfeiture of charters *really granted* and not to cases where no charter ever existed. In the case before you, the information states that " they " (the defendants) " without lawful authority, and without any warrant, grant or charter, usurp, etc.." Thus it will be seen that so far as now appears to the Court, *these proceedings are not for the forfeiture of any charter*, but to oust individuals who pretend a charter never really in existence. The constitutional provision in question certainly does not cover such a case.

(*c*)   That even if both of the above propositions are incorrect, the General Assembly having failed to carry out the constitutional provision in question, so far as relates to old existing charters, not amended, renewed or revived under the general law, the old com-

mon law and the old statutes in this State continue in full and un-impaired force.

*Section 18 of the Schedule, of the amended Constitution, p. 54,* provides that :

" All the laws of this State existing at the time this Constitution shall take effect, and not inconsistent with it, shall remain in force, except so far as they shall be altered by future laws." This section, the fruit of an abundant caution on the part of our constitution framers, expressly continued the old common law and the old statute relating to informations before adverted to.

(*d*)   That the constitutional provision in question relating to the forfeiture of charters is not self-operative or *self-executing ;* that it does not go into effect *proprio vigore,* but that it is simply addressed to the conscience of the Legislature.

The contention that said constitutional provision *ipso facto or per se repeals* the old common law and the old statute of this State regarding informations, must of necessity be based upon the claim that it is itself an existing law, not dependent upon legislative enactment.   That this is not the law will be clearly seen from the following cases and authorities :

*Cooley's Constitutional Limitations, 98 ; A. & E. Ency. of Law (2nd Ed.), Vol. 6, pp. 915, 917 ; Cahoon vs. Commonwealth, 20 Gratten, ( Va.), 733.*

*Article 3, Section 3 of the Constitution* provided that, "All persons entitled to vote and hold office, and none others, shall be eligible to sit as jurors."

Held that this constitutional provision was not self-acting so as to repeal former statutes inconsistent therewith, before new statutes carrying said provision into effect had been passed.

This point was decided in a criminal case against the application of the accused.

The following cases selected from no inconsiderable number referred to in *Cooley* and the *American & English Encyclopedia* will be found fully to substantiate the proposition laid down above.

*St. Joseph Board of Pub. Schools vs. Patten et. al., 62 Mo., 444; Lehigh Iron Co. vs. Lower Macungia Township, 81 Pa. St., 482; Cairo & Fulton R. R. Co. vs. Trout, 32 Ark., 17; Bowie vs. Lott, 24 La., 214.*

*Hilles* and *Higgins* for the defendants, contended that franchises claimed by a corporation rested primarily in the people but that that power had been delegated by the Constitution to the legislative branch of the government; that that power rests in the Legislature subject to constitutional restraint, and if the Legislature cannot forfeit a charter excepting under general law, the Attorney-General of the State certainly could not do so; that the Legislature must first speak, and not having spoken it is to be presumed that it did not intend to speak; that nonaction and inaction were in this case synonymous; unless the Legislature has acted where the Constitution has made it its duty to act, it must be presumed that it did not intend to insist upon the forfeitures of charters. That therefore until the Legislature passed a law under the Constitution there was no power in the Attorney-General to forfeit a charter. It was not denied that the Court had jurisdiction over informations both criminal and civil.

The provision of the *Constitution (Article 9, Section 1)* is not self-acting; and until the Legislature gives him authority, the Attorney-General has no power to act.

Lore, C. J.:—This is practically the same question that was argued before us in New Castle County with much learning and has been again so argued here.

The rule was discharged in New Castle County, on the ground that we considered it a *local* action under the decisions in this State. We have had the benefit of that argument and of the consideration of the question between times, as well as the benefit of the argument today. We are very clear about the matter; we think the leave of the Court ought to be granted to file this information, and we so decide.

The defendants filed their pleas, the one relied upon being as follows:

"And for a further and subsequent plea in this behalf the said defendants, by leave of the Court here for this purpose first had and obtained, according to the form of the statute in such case made and provided, say, that they are further greatly troubled and vexed by color thereof, and that unjustly, because, protesting that the said information, and the matters therein contained, are not sufficient in law, and that they the said defendants, are not bound by the law of the land to answer to the same, yet for a plea in that behalf the said defendants say that true it is that they are assuming to act as a corporation, under the name of Delaware Electric Railway Company, and by that name are assuming perpetual succession; and by that name to sue and be sued, plead and be impleaded, answer and be answered unto, defend and be defended in any and all courts, and places whatsoever, whether in this State or elsewhere, in all manner of actions, suits, complaints, pleas, causes, matters and demands whatsoever; and further by that name are assuming the power to purchase, lease, take, hold and own by contract, deed, devise, bequest, gift, assignment, or otherwise, estates, real, personal or mixed, of every kind, and the same to grant, mortgage, sell, lease, alien, convey and dispose of, and further to have a common seal, and to make and ordain by-laws, and to exercise and enjoy all the franchises incident to a corporation duly incorporated and organized for the purpose of locating, constructing and operating a railway, the cars and carriages of which are to be propelled by any motive power other than steam, and also to exercise the rights of eminent domain, and to construct, maintain and operate a railway from a point on the Delaware Railroad at or near the Dover station, and to and into the town of Milford, or to any other intermediate point or points, within Kent County, and also from a point within the limits of the said town of Dover to a point on the Delaware Bay shore, at or near Woodland Beach, or to intermediate points in said route, and for that purpose to use and

occupy any county bridge, and so much of any street, avenue, public road, or turnpike, as may be determined by the directors of the said company, with the consent of the authorities having the care thereof; all of which matters and things these defendants further in fact say that they are authorized and warranted by law to do under and by virtue of the provisions of the laws of the State of Delaware, as contained in *Chapter 85, Volume 20, Laws of Delaware*, under the title of ' An Act to Incorporate the Dover and Milford Railway Company,' and under *Chapter 522, Volume 20, Laws of Delaware*, entitled ' An Act to Incorporate the Dover and Bay Shore Railway Company,' together with the provisions of the act known as *Chapter 526, Volume 20, Laws of Delaware*, entitled, ' A supplement to the Act entitled "An Act to incorporate the Dover and Milford Railway Company," ' passed at Dover March 4, 1897, and these defendants in fact further say that by virtue of the act first aforesaid, the Dover and Milford Railway Company was declared to be incorporated as soon as one hundred shares of the capital stock of said Company should have been subscribed for, which said subscription has been heretofore, to wit, on or before the fourth day of November, A. D. 1897, duly made; that said Dover and Milford Railway Company was in all respects duly organized, and was a corporation of the State of Delaware, having power to construct, maintain and operate a railway from a point on the Delaware Railroad at or near Dover, to and into the town of Milford, and having the other powers given to it by virtue of the said act; and these defendants in fact further say that by virtue of the said act entitled ' An Act to Incorporate the Dover and Bay Shore Railway Company,' the said Dover and Bay Shore Railway Company was created a corporation as soon as one hundred shares of the capital stock should have been subscribed for, and fifty per centum of the par value thereof should have been paid in in cash by the subscribers; and these defendants in fact further say that one hundred shares of the said capital stock was so subscribed for, and fifty per centum of the par value thereof was

paid in in cash by the subscribers heretofore, to wit, on the fourth day of November, A. D. 1897, and that the said Dover and Bay Shore Railway Company was duly incorporated and organized under the Laws of the State of Delaware ; and these defendants in fact further say that in pursuance of the power in them vested by law, and in pursuance of the direction of all the stockholders of both of the said companies, legally obtained and certified, the said companies on the fifth day of November, A. D. 1897, were duly merged, and thereafter constituted one consolidated corporation, or company, having all the rights and privileges possessed by the two companies so merged, under the name of ' Delaware Electric Railway Company,' which said Company was on the fifth day of November, 1897, duly organized and became a corporation of the State of Delaware ; and these defendants in fact further say that they are the officers, directors and stockholders in part of the said Delaware Electric Railway Company, and in the doing of the acts hereinbefore mentioned have acted only for and on behalf of the said company in the premises. Without this, that they, the said defendants, unlawfully, and without any warrant, grant or charter assume so to act, or unlawfully, and without authority of law, and without any warrant, grant or charter, assume to exercise the powers in the said information mentioned, or have usurped, and still do ursup any powers or franchises whatsoever in manner and form as in the said information is above in that behalf alleged, and this they, the said defendants, are ready to verify. Wherefore they pray judgment."

Counsel for the State demurred to the above plea and assigned the following causes :

1. That it does not appear by the said plea that the said Delaware Electric Railway Company is or ever was a corporation lawfully created under the laws of the State of Delaware or under the laws of any other State, territory or country.

2. That it does not appear by said plea that the Dover and

Milford Railway Company was an existing corporation at the date of the pretended merger of the Dover and Milford Railway Company with the Dover and Bay Shore Railway Company, to wit; on the fifth day of November A. D. 1897.

3. That it does not appear by said plea that the Dover and Milford Railway Company was organized under the provisions of *Chapter 85, of Volume 20, Laws of Delaware,* entitled "An Act to Incorporate the Dover and Milford Railway Company," within six months after the date of the passage of said act, to wit; within six months after March 4, 1895.

4. That it does not appear by said plea that the construction of the railway authorized by the act entitled ' An Act to Incorporate the Dover and Milford Railway Company," was commenced within six months after the passage of said act, to wit; within six months after the fourth day of March, 1895.

5. That it does not appear by said plea that the railway authorized by the act entitled, "An Act to Incorporate the Dover and Milford Railway Company," was completed, equipped, and in operation within three years after the date of the passage of said act, to wit; within three years after the fourth day of March, 1895.

6. That it does not appear by said plea that the said Dover and Milford Railway Company was duly organized on or before the fifth day of November, 1897.

7. That it does not appear by said plea that the said Dover and Milford Railway Company ever accepted the act of the General Assembly of the State of Delaware, entitled "A supplement to the Act entitled 'An Act to Incorporate the Dover and Milford Railway Company,'" passed at Dover March 4, 1895, mentioned in said plea, or that any organization was ever effected by said company under the provision of said supplementary act.

8. That it does appear by said plea, that the Dover and Bay Shore Railway Company was not duly organized and incorporated at the time of the pretended merger of the said Dover and Bay Shore Railway Company, with the Dover and Milford Railway Company, to wit; on the fifth day of November, 1897.

9. That it does not appear by the said plea, that the said Dover and Bay Shore Railway Company was duly organized on or before the fifth day of November, 1897.

10. That it does not appear by the said plea, that the Dover and Bay Shore Railway Company was ever organized in accordance with the provisions of the act, being Chapter 522, Volume 20 of the Laws of Delaware, entitled, "An Act to Incorporate the Dover and Bay Shore Railway Company."

11. That it does not appear by said plea, that the construction of the railway authorized by the act entitled "An Act to Incorporate the Dover and Bay Shore Railway Company," was commenced within six months after the passage of said act, to wit; within six months after the seventh day of May, 1897.

12. That it does not appear by said plea that there ever was a corporation by the name of "Dover and Bay Shore Railway Company" existing under the laws of the State of Delaware or the laws of any other State, territory or country.

13. That the said plea does not show any right, power or authority of the Dover and Bay Shore Railway Company to merge with the Dover and Milford Railway Company.

14. That the said plea does not show any right, power or authority of the Dover and Milford Railway Company, to merge with the Dover and Bay Shore Railway Company.

15. That it does not appear by said plea that the Delaware

Electric Railway Company was or is a corporation created by or under general law of the General Assembly of the State of Delaware, or by or under the law of any other State, territory or country.

16.    That it does not appear by said plea how or in what manner the said defendants became or are the officers and directors of the Delaware Electric Railway Company.

17.    That it does not appear by said plea that the defendants were ever duly elected or constituted the officers or directors of the Delaware Electric Railway Company. ·

### BRIEF OF COUNSEL FOR THE STATE.

It is a well settled rule of law that, in proceedings like the present;

" Where the object of the proceeding is such as to oust one or more persons, or a corporation, of franchises which have never been granted, but which have been usurped, the respondent or respondents must either justify or disclaim ; a mere plea of not guilty, or of *non usurpavit* is not a good plea ; because the respondent is called upon to show by what authority he holds the office or franchise referred to ; and such a plea does not show his warrant or authority."

*Thompson on Corporations, Vol. 5, Secs. 6799, 6800 and 6797, and Ibid, Vol. 1, Sec. 775 ; High on Extra. Rems., Secs. 652 and 712.*

In the present case defendants undertake to justify; therefore their plea must show facts which, if true, would establish their right to do the things alleged in the information. In order for them to do this, the plea must show not only that they are the legally authorized officers, or agents of a company, but also that such company is a legally existing corporation with power to do the things complained of.

1.—*Does the plea show that Delaware Electric Railway Company is a lawfully created corporation ?*

The plea itself discloses the fact that said company was not created by a special charter or under general law of this State, or by or under the laws of any other State, territory or country; but the plea does undertake to show that it was the creature of an alleged merger between two prior companies, to wit: Dover and Milford Railway Company and Dover and Bay Shore Railway Company; and that such merger took place November 5, 1897.

But in order to substantiate this allegation, we submit the plea must first show three things:

*First.* That said Dover and Milford Railway Company and Dover and Bay Shore Railway Company were corporations legally existing in this State prior to said alleged merger, and that they continued to legally exist as such up to the date of said pretended merger, to wit: up to November 5, 1897.

*Second.* That each of said companies had at said time the legal power and authority to enter into said merger.

*Third.* That such legal power and authority to merge was properly and lawfully executed at the time of said alleged merger.

It is admitted that the passage of a charter does not *ipso facto* create a corporation, or give legal existence to a body politic. Before this·can be accomplished, an acceptance of, and organization under said charter must have been had and must appear.

*P., W. & B. R. R. Co. vs. Kent County R. R. Co., 5 Houst., 127, (132 and 133); Thompson on Corporations, Vol. 1, Sec. 44; A. & E. Ency. of Law, Vol. 7, (Second Ed.), pp. 656 and 658; State vs. Dawson, 16 Ind., 40; Sheer vs. Ohio, 95 U. S., 319.*

Section 4 of the act entitled "An Act to incorporate the Dover and Milford Railway Company," (*Chapter 85, Vol. 20, Laws of Delaware*), contains the following provision : " provided, however, that the construction of the railway herein authorized shall be commenced within six months after the passage of this act,

and it shall be completed, equipped and in operation within three years thereafter, otherwise this act shall become void, and all the rights, privileges and franchises herein granted shall wholly cease and determine," etc.

And Section 6 of the act entitled "An Act to incorporate the Dover and Bay Shore Railway Company" contains a similar provision in the precise words just quoted.— *Chapter 522, Vol. 20, Laws of Delaware.*

The first act was passed March 4, 1895; the second Act, May 7, 1897.

Here then we see from the very acts themselves that even though said companies might once have had a corporate existence by a lawful organization, yet a failure to begin the work of construction within six months from the date of their respective passages, would work a complete and total extinguishment of such corporate existence.

But it may be contended that these conditions as to the commencement and completion of the construction of said railways are conditions subsequent, and that conditions subsequent are presumed to have been performed until such performance is expressly denied by replication.

What is the test for determining whether the charter conditions are precedent or subsequent. Simply this: If corporate existence could never have been had without their performance they are conditions precedent; but if their performance simply goes to the continuance of corporate existence once had, they are conditions subsequent.

If these were conditions precedent to the corporate existence of Delaware Electric Railway Company then the plea is bad for not having alleged their performance. This rule of law is too plain to need authorities.

*Thompson on Corporations, Vol. 4, Sec. 5,685. Ibid. Vol. 2, Sec. 1,827 and cases cited; Ibid. Vol. 1., Secs. 236 and 227.*

The rules governing declarations in ordinary causes, apply to

the plea in cases like the present, and everything essential to be proved must be alleged.

*Thompson on Corporation, Vol. 5, Sec. 6,805 ; Ibid. Vol. 1, Sec. 776 ; High on Extra Rems., Sec. 712.*

Is this altered by the passage of the act entitled, "A Supplement to the act entitled 'An Act to incorporate the Dover and Milford Railway Company," passed at Dover March 4, 1895. This supplementary act was passed May 25, 1897.

In the first place it must be noted that the pleas of defendants do not allege any acceptance of said act or any organization under it. The plea recites it by its title, but this is all. Even further than this the plea undertakes to set up an organization which must have taken place under the original act because it states that one hundred shares of stock were subscribed. This amount of subscription was all that was required under the original act, but under the supplementary act, Section 2, it is provided "that before any organization shall be effected as is provided by Section 2 of said original act, at least ten thousand dollars of the capital stock subscriptions therein authorized shall be fully paid in cash."

If defendants based their claim to exist by *merger* on this supplementary act, this subscription payment must have been averred, just as they did aver the payment of the amount required by the charter of the Dover and Bay Shore Company. If therefore, their title is through this supplementary act, their plea is bad, and if through the original act, it is still bad for the reasons foregoing.

On examining the provisions of this supplementary act, however, it is apparent that the General Assembly of 1897, considered that no corporation ever had come into existence under the original act.

It is plain from this provision that in the legislative mind no organization under the first act had ever taken place.

If this be not sufficiently plain, however, Section 1, of the supplement conclusively shows that any corporate existence under

the original act had then become extinct, because in that section the commencement of the construction of the railway is now fixed within six months of its enactment. This being more than six months after the date of the passage of the original shows that the railway had certainly not commenced within the time fixed by said original act, and therefore any supposed corporate existence must have *ipso facto* terminated.

Bearing this fact in mind, consider *Section 1 of Article 9 of the amended Constitution* which provides that, " No corporation shall be created, amended, renewed or revived by special act, but only by or under general law," etc.

This constitutional provision was in full force and operation from the tenth day of June, 1897.

If then this Dover and Bay Shore Company never was created a corporation until November 4, 1897, and if its supposed creation was then effected by force and virtue of the special act referred to in the plea, is not this in direct violation of the constitutional provision just quoted? Can any amount of ingenuity make it otherwise? See the following cases exactly in point : *State ex rel. Weir vs. Dawson et. al., 16 Ind., 40 ; Cook on Stock and Corporations, Vol. 1., Sec. 2, a-note; Quinlass vs. H. & T. C. Ry. Co., 89 Tex., 356; Aspinwall et. al., vs. Com. of County of Davies, 22 Howard, ( U. S.), 364.*

As to causes of demurrer 15 and 16.

Let us now consider the second proposition laid down in the beginning of this brief, to wit :

*Second. Also that each of said companies (Dover and Milford and Dover and Bay Shore) had at said time (Nov. 5, 1897) the legal power and authority to enter into such merger.*

It is first of all to be noted that the Dover and Bay Shore Company's charter contains absolutely no mention or provision whatsoever relating to merger. Therefore all claim of a power to merge must be based on the provisions of the charter of the Dover

and Milford Company; there then being no general statutory power to merge in this State.

Section 2 of the charter of the Dover and Milford Company forms the basis of this claim of the power to merge. Let us see whether it does give the legal authority to merge with the Dover and Bay Shore Company, the latter having nothing in its charter on the subject.

As directly opposed to any such right, the following is submitted as a correct statement of the law of merger:

*In the absence of a general statute conferring power of meger, the authority to merge must have been contained the charters of both the companies seeking to merge.*

*Thompson on Corporations, Vol. 7, Sec. 8217; Morrill vs. Smith County, 89 Texas, 529; E. L. and Red Rover Ry. Co. vs. State, 75 Texas, 434; State vs. Consolidated Co., 46 Md. 1; Thompson, Vol. 7, Secs. 8216 and 8228.*

*That it does not appear by said plea that Delaware Electric Railway Company was or is a corporation created by or under general law of the General Assembly of the State of Delaware, or by or under the law of any other State, territory or county.*

Admitting, for the sake of argument, that all this is properly shown by said plea, it is submitted that even then the supposed creation of Delaware Electric Company is illegal because it is in violation of *Section 1 of Article 9, of the amended Constitution* which provides that,

" No corporation shall be created, amended, or renewed, or revived by special act, but only by or under general law."

### BRIEF OF COUNSEL FOR DEFENDANTS.

1.—We contend that the allegations of the second plea show conclusively, if they be true, that the Delaware Electric Railway Company was a corporation. Under well recognized principles of

pleading, when this has been alleged the continued existence of the corporation is not necessary to be alleged.

*High on Quo Warranto, Secs. 720 and 727; Attorney General vs. Michigan Bank, 2 Doug., (Mich.), 359; People vs. Co., 15 Wend., 113; People vs. Co., 9 Wend., 351; Thompson on Corporations, Secs. 6797–6805.*

The plea alleges that by the merger of the Dover and Bay Shore Company and Dover and Milford Railway Company there was formed " one consolidated corporation, or company, having all the rights and privileges possessed by the two companies so merged, under the name of Delaware Electric Railway Company."

2.—The allegation of the plea is that by virtue of the act of March 4, 1895, the Dover and Milford Railway Company was declared to be incorporated upon the payment of one hundred shares of its capital stock; that said payment was made on or before the fourth day of November, A. D., 1897, and that that company was in all respects duly organized, and was a corporation of the State of Delaware.

It is submitted that it is sufficient to allege the performance of conditions precedent to organization.

We allege the performance of the condition precedent to corporate existence.

3, 4, 5 and 9.—It is a sufficient answer to these grounds of demurrer that the Legislature of the State, by act of May 26, 1897, revised and re-enacted the charter of the Dover and Milford Railway Company.

6.—The ground of demurrer here alleged is met by the allegation of the plea that the stock was subsbribed for on or before the fourth day of November, A. D. 1897, and on the fifth day of November, 1897, there was executed an agreement of merger.

*6 Am. & Eng. Ency. of Law, 2d Edition, 211; Clear Water vs. Meredith, 1 Wall, 39.*

The only time in which this corporation could have been duly organized and existing as a corporation was before the time of merger.    That it was such corporation is alleged directly in the plea.

7.—The allegation of the plea is that the stock was subscribed, the company duly organized, and that it executed an agreement of merger.

It is submitted that any one of these things standing alone would be sufficient evidence of an acceptance.

*1 Thompson on Corporations, Secs. 61 and 97 and cases cited;
7 Thomp. on Corporations, Sec. 8161.*

The amendment was not only beneficial to the corporation, but there are allegations in the pleas of acts under the extended franchise created by the amendment.

10.—It is submitted that it would be difficult to read the plea in any light excepting that the Dover and Bay Shore Railway Company was organized in pursuance of the act incorporating it, but the language of the plea is "that by virtue of the said act entitled 'An Act to Incorporate the Dover and Bay Shore Railway Company,'" the said company was created a corporation upon the payment of the capital stock; that said stock was paid, and that the said company was duly incorporated and organized under the laws of the State of Delaware.

It certainly would be a refinement of reasoning to say that this does not allege incorporation and organization under that act.

11.—It is submitted that it is not necessary for these defendants to allege in their pleading the performance of the condition subsequent, namely, that the road should be commenced within six months from the passage of the act.

In the case of a condition precedent it is always necessary for the pleader to allege performance of such condition when he

bases his claim of right upon it. The performance, or nonper-
formance, of a condition subsequent which may work a defeasance
is a matter to be pleaded by the other side.

*4 Ency. Pldg. & Prac., 627 ; Shockley vs. Parvis, 4 Houst.,
568 ; 1 Morawetz on Corporations, Secs. 26, 29, 410.*

Further than this we submit that in this proceeding, it being
one against individuals, and not against the corporation, no grounds
of forfeiture can be urged, or alleged, for wherever a forfeiture of
corporate franchise is claimed by the State, the corporation itself is
of necessity a party to such proceeding.

*King vs. Amery, 2 Term. Reps., 514, 521, 522, 524 ; Spelling
on Extraordinary Relief, Sec. 1843 ; State vs. Barron, 57 N. H.,
498 ; State vs. Cinn. Gas Light Co., 18 Ohio St., 262, 285, 287 ;
State vs. Taylor, 25 Ohio St., 279, 283 ; 2 Morawetz on Corpora-
tions, Sec. 1015 ; Thompson on Corporations, Sec. 6782 ; People vs.
Rensler, 15 Wendell, 113 ; State vs. Sonbery, 42 Minn., 55 ; People
vs. Flint, 64 Cal., 49 ; Taylor vs. Holmes, 14 Fed. 498, 505; Green
Brier Lumber Co. vs. Ward, 30 W. Va., 43.*

It is submitted that the nonperformance of this condition
would not *ipso facto* work the dissolution of the corporation, for
apart from the general principle of the common law that a condi-
tion broken, where such condition was a condition subsequent, re-
quires a claim on behalf of the grantor to divest the estate depend-
ing thereon is elementary, and although some of the cases, notably
the cases of *Brooklyn &c. Ry. Co., 72 New York, 245 ; Brooklyn
&c. Ry. Co. vs. Brooklyn, 78 New York, 524,* and in *Re Brooklyn,
125 New York, 434,* and some cases depending upon these for their
authority hold that, under language somewhat similar to that con-
tained in this act, a corporation by the nonperformance of the
condition *ipso facto* dissolved.

It is submitted that the weight of authority and reason is the
other way.

In New York, Judge Earl, *In re Brooklyn, 125 New York,
434, (at 441)* declares these cases to be *border cases* and these deci-

sions it is absolutely impossible to reconcile with the decision of the *New York etc. Company, 148 New York, 540, 546, 548.*

See criticism of this case, *Cook on Corporations, last Edition, Sec. 638, or People vs. Co., 9 Wend., 351, 383.*

*Cook on Corporations, Secs. 638, 913,* and cases cited; *3 Wood on Railroads, Secs. 497, 499 ; Elliott on Railroads, Secs. 47, 607, 801 ; Briggs vs. Co., 137 Mass., 71 ; Atchafalaya Bank vs. Darson, 13 Iowa, 497 ; Vermont etc. vs. Tayne, 34 Vt., 2 and 55, 57 ; Chicago vs. Chicago, 105 Ill., 73, 77, 78 ; Attorney General vs. Co., 112 Ill., 520, 537 ; Myrlea vs. Ry., 93 Wis., 604 ; Beebe vs. R. R. Co., 139 U. S., 663.*

Again we insist that under the constitutional provision already argued in full to the Court, the Attorney-General cannot proceed to forfeit the charter of a corporation except by general law.

13 and 14.—It is not necessary to plead law. The charter of the Dover and Milford Railway Company, Section 2, provides among other powers of the corporation that it shall be authorized " to consolidate, or merge, with any corporation or corporations, heretofore or hereafter created," etc., " the right of merger being hereby conferred upon any company so wishing to consolidate that does not possess it." This law was re-enacted, as has before been stated, May 26, 1897, and after the incorporation of the Dover and Bay Shore Railway Company on May 7, 1897.

15.—There is no necessity that the Delaware Electric Railway Company should be organized under any " general " law of the State of Delaware. It was organized under authority conferred by special act.

16 and 17.—This proceeding is not to oust the defendants from an office, and it is submitted that it would be pleading evidence to do more than allege the fact that they are stockholders and officers of the corporation. How they became stockholders or

officers of the corporation is simply a matter of proof, and not of pleading.

LORE, C. J. :—We will take up the grounds of demurrer filed in this case and dispose of them in the order in which they are specifically set forth, in the paper writing.

Grounds numbers one and fifteen, which are practically the same, are sustained.

In order to make lawful the organization of the Delaware Electric Railway Company at the time of the merger on the fifth day of November, 1897, it must appear on the face of the plea that there were at that time in existence the two corporations competent to make a merger. We find that the supplement which re-enacted and revived the act creating the Dover and Milford Railway Company contains this provision : " That before any organization shall be effected, as is provided by Section 2 of said original act, at least ten thousand dollars of the capital stock subscriptions therein authorized shall be fully paid in cash." We deem such cash payments to be a condition precedent, and it is not averred upon the face of the papers. So that the existence of the Dover and Milford Railway Company does not sufficiently appear upon the face of the pleas.

For this reason we sustain the demurrers numbers 1 and 15.

Just here we will say that we do not deem it necessary now to pass upon the constitutional question (which came up incidentally in the argument but was not specifically raised by the demurrer), as to whether the merger, being after the promulgation of the Constitution on June 10, 1897, was the creation of a new corporation, within the constitution, and was inhibited by it, being by special act, not by general law. If the question is to be passed upon by this Court, it can be raised in a subsequent proceeding. It is a very interesting question, and, from our investigation so far, a very nice question. But we do not care to pass upon it until it is specifically raised and fully argued ; it is not necessary to do so in disposing of these two causes of demurrer, numbers 1 and 15.

We sustain cause of demurrer number 2 on the same ground, because it is a condition precedent which should appear upon the face of the pleadings, that the ten thousand dollars was paid in cash, and as that does not appear thereon, we sustain the second cause of demurrer.

We overrule the third cause of demurrer, for the reason that it is a condition subsequent, and need not be averred.

Causes of demurrer numbers 4 and 5 are overruled, for the same reason.

We sustain causes of demurrer numbers 6 and 9, which are to the same effect, for the reason that, in our judgment, it should appear affirmatively on the face of the plea that these corporations were organized on or before the fifth day of November, 1897, the date of the merger, which fact, in our opinion does not so affirmatively appear.

Cause of demurrer number 7 we overrule, as we think the fact therein referred to is sufficiently averred upon the face of the plea.

Cause of demurrer number 8 we overrule, as we think the general averment in the plea is sufficient.

We also overrule causes of demurrer numbers 10 and 12 as we think the averment in the plea is sufficient.

We overrule cause of demurrer number 11, as we think that it relates to a condition subsequent, and is not necessary to be averred.

Causes of demurrer numbers 13 and 14 are overruled. We think on the face of the pleading the matter therein referred to is sufficiently set out.

Causes of demurrer numbers 16 and 17 we overrule, for the reason that we deem it unnecessary that the plea should aver the manner in which the officers and directors were elected. They are averred to be officers and directors; we think that this is sufficient.

On November 16th an amended plea was filed by the defendants.

Demurrers were filed to the said amended plea, the substance of which demurrers is set out in the following brief of counsel for State:

### BRIEF OF COUNSEL FOR THE STATE.

The several causes of demurrer go to the three following points:

*I.   That the Dover and Milford and the Dover and Bay Shore Railway Companies were not organized (and therefore not created) until after the tenth of June, 1897, (the date of going into effect of the amended Constitution) and that therefore such creation was contrary to Section 1, Article 9, of said Constitution.*

*II.   That the alleged consolidation by which the Delaware Electric Railway Company came into being, took place after said tenth of June, 1897; that the effect of this consolidation was the creation of a new corporation contrary to said constitutional provision?*

*III.   That neither of said two original companies had any power or authority to consolidate one with the other; and that even if any such power or authority ever did exist, it was taken away by said constitutional provision.*

Section 1, Article 9, is as follows:

" No corporation shall hereafter be created, amended, renewed or revived by special act, but only by or under general law, etc."

It will probably be contended that the true intendment of the provision is a restriction upon the Legislature merely; and that its meaning is—no legislature shall *hereafter* pass any special act conferring corporate privileges.

In reply, it is submitted, that such is not the language nor the words of said section.

*Cooley's Constitutional Limitations, (6th Edition), page 71,* and cases cited.

If then our contention be correct, and the inhibition in said section is against the creation of corporations except only by or under general law, let us consider the first point made on page 1 of this brief, namely :

*I. That the Dover and Milford and the Dover and Bay Shore Railway Companies were not organized (and therefore not created) until after June 10, 1897, and that therefore such creation was contrary to Section 1, Article 9, of the amended Constitution.*

The plea shows that the said two companies did not pretend to organize until after June 10, 1897, and it also shows that such pretended organization did not take place by or under general law. Now our contention is, that the organization is the creation of the corporation, and hence there was the creation of the corporation not by or under general law, after the adoption of the amended Constitution.

It is submitted that the underlying principles in regard to corporate charters, are precisely those which govern private contracts in the ordinary affairs of life. The law governing corporate charters, so far as the State and the corporation are concerned, is not peculiar and to itself. It is simply the law governing ordinary contracts, laid down so often, and so firmly established by the Courts of this State.

This was the whole and sole substance of the decision in the Dartmouth College case,—the fountain head of American law upon this subject.

By *Sections 1 and 2 of Chapter 85, Vol. 20 Del. Laws,* (the original charter of Dover and Milford Co.), and by *Section 2 of Chapter 526,* same volume, it will be seen that the parties named therein are mere commissioners, and further that conditions precedent (the subscription of stock in the one case, and the ten thousand dollar payment in the other) are expressly stipulated.

Further, by *Sections 1 and 2 of Chapter 522,* same volume (being the original charter of Dover and Bay Shore Co.), the same appears as to this latter company. The charter act of the State may be withdrawn at any time before it has been accepted, either expressly, or by an organization which implies an acceptance. There is absolutely no doubt as to the soundness of this principle.

*Quinlan vs. H. & T. C. Ry. Co., 89 Tex., 356, 373; Mr. Wood, in his work on Railroads (Edition of 1894) Sec. 10 ; Thompson on Corporations, Vol. 7, Sec. 8161 ; Elliot on Railroads, Sec. 17, p. 24.*

The State makes the offer of corporate franchises on the day the special act is passed, but the corporation is not created until the date of the acceptance by the organization.

Note the following authorities upon this point :

*P., W. & B. R. R. Co. vs. Kent County R. R. Co., 5 Houst., 127 (at pages 132, 133); Cook on Corporations, Vol. 1,Sec 2-a; Beach on Corporations, Vol. 1, Sec. 15, page 23 ; Wood on Railways, Vol. 1, Sec. 10, page 23 ; Thompson on Corporations, Vol. 7, Sec. 8160, and Ibid., Vol. 1, Secs. 57 and 58 ; Elliott on Railroads, Vol. 1 page 24; Morawetz on Private Corporations, Vol. 1, Sec. 21.*

*State vs. Dawson, 16 Indiana, p. 40,* is cited as an authority identically like the one before the Court.

The following authorities cite the *State vs. Dawson case* as sound law:

*Thompson on Corporations, Vol. 7, Sec. 8161 ; Ibid. Vol. 1, Secs. 57 and 58 ; Cook on Corporations, Vol. 1, Sec. 2-a, note 1 ; Beach on Corporations, Vol. 1, Secs. 15 and 24; Wood on Railroads, Vol. 1, pages 22 and 23 (Edition of 1894) ; Elliott on Railroads, Vol. 1, Sec. 17.*

Other authorities directly upholding the same law laid down in the case of *State vs. Dawson,* and going to the same length are:

*Thompson on Corporations, Vol. 1, Sec. 576 ; American and Eng. Ency. of Law (Second Edition), Vol. 6, p. 805 ; Cook on Corporations, Vol. 1, Sec. 2-a, note 1 ; Gillespie vs. Ft. Wayne and Southern R. R. Co., 17 Ind., 243 ; Harman vs. Southam, 16 Indiana, 190 ;*

*Norton vs. Brownsville, 129 U. S., 479; Quinlan vs. H. & T. Co., 89 Tex., 356 (377); Attorney-General vs. Railroad Companies, 35 Wis., 425 (at pages 605-606); Aspinwall et al. vs Commissioners of County of Davies, 22 Howard (U. S.), 364 (at 378); State vs. Blake, et al., 35 N. J. Law, 208 (at 214).*

*II. That the alleged consolidation by which Delaware Electric Railway Company came into being took place after June 10, 1897, and that the effect of this consolidation was the creation of a new corporation contrary to said constitutional provision, Sec. 1, Art. 9.*

It will be seen that in *Section 2, Chapter 85, Volume 20, Delaware Laws* (the original charter of Dover and Milford Ry. Co.), which contains all the authority for the creation of Delaware Electric Ry. Co., the terms "merge" and "consolidate" are used interchangeably and as synonymous. As a matter of fact, however, these two are technical terms with a wide difference in their meaning and effect.

The authorities are abundant showing the distinctions between merger and consolidation; but the case of *State vs. Atlantic and Gulf R. R. Co., 60 Georgia, 268, at page 274,* explains these differences more clearly and succinctly, perhaps, than any other— and see *Am. and Eng. Ency. of Law (2d Ed.), Vol. 6, p. 811.*

Now what do these defendants claim to have been the effect of their alleged union of the two original companies on November 5, 1897? Is it not that a single corporation then came into being, clothed with all the rights, privileges and authority of *both* the old companies. The plea says so. We are not left to idle conjecture on this head. This being the case, it is consolidation and its effects that demand our attention.

What is the effect of a consolidation?

Our contention is that it is the creation of a new corporation; and that, therefore, such a consolidation as in the present case, is contrary to *Section 1, of Article 9 of the amended Constitution*

which forbids the creation of a corporation except by or under general law.

That the effect of a consolidation is the creation of a new corporation is fully established by the following authorities:

*Thompson on Corporations, Vol. 1, Secs. 315, 322, 365, 395 ; Am. and Eng. Ency. of Law (2nd Edition) Vol. 6, page 811 and note 1, and cases cited.*

But the cases go much further than this. They go to the length that consolidation being the creation of a new corporation, the creature of the consolidation is treated exactly as if it was created by special act on the day of the consolidation.

*Smith vs. The Lake Shore Ry. Co., 114 Mich., 460; State vs. Me. Cent. R. Co., 66 Me., 488; Norfolk and Western Co. vs. Pendleton, 156 U. S., 667, (at 673).*

*McCandless vs. Railroad Co., 38 S. C., 103 (at 111); Shields vs. Ohio, 95 U. S., 319.*

*R. R. Co. vs. Georgia, 98 U. S., 359; Pearsall vs. Great Northern, 161 U. S., 646, (at 664, 668, 669 and 672); State vs. Sherman, 22 O. St., 412.*

But what language can be stronger than the following quoted from The American and English Encyclopedia of Law (2nd Edition), Vol. 6, p. 805:

"However, a constitutional provision against the creation of corporations by special act *undoubtedly* includes consolidation."

*III.* That neither of said companies had any power or authority to consolidate one with the other; and that even if any such power or authority ever did exist, it was taken away by said constitutional provision Sec. 1, Art. 9.

We cite the following authorities to the effect that the power to consolidate must exist in each of the charters of the companies desiring to consolidate, unless there be a special consolidation act, or a general law authorizing consolidation.

*Morrill vs. Smith County, 89 Texas, 529.*

*E. L. and Red. R. Co. vs. State, 75 Texas, 434.*

*State vs. Consolidated Coal Company, 46 Md., 1.*

It may be contended, however, that the language of Section 2 of the original charter of Dover and Milford Railway Company (*Chap. 85 of 20 Del. Laws*) is sufficiently broad and comprehensive to confer such authority upon any other company so desiring to consolidate.

If the language in the charter of the Dover and Milford Railway Company could confer the power of consolidation upon the Dover and Bay Shore Company, then it must have had the effect of an amendment to the charter of the last named company. The power attempted to be conferred is only to "companies desiring to consolidate." Now the plea shows that the Dover and Bay Shore Company could not have accepted this amendatory power of consolidation until November, 1897, because until then it had no legal corporate existence. It follows then that this Dover and Bay Shore Railway Company attempted to amend its charter after June 10, 1897, contrary to *Section 1, Article 9 of the amended Constitution.*

But it may be said that the power to consolidate expressed in the charter of the Dover and Milford Ry. Co. was a contract of the State with that company and hence not even the Constitution of the State could annul or abridge it.

As a complete answer to any such contention we cite, *Thompson on Corporations, Vol. 7, Sec. 8219,* and cases there cited.

See also, *Pearsall vs. Great Northern Ry. Co., 161 U. S., 646.*

Now if a legislature can withdraw the right to consolidate at any time before that right has been executed, how much the more may this be done by a constitution.

The principle that it is an established doctrine, that rights or franchises while in *fieri* (that is, unexecuted, and simply unaccepted) may be withdrawn, would seem a principle too well settled to need authorities, but see the following cases :

*Aspinwall vs. Commissioners, County of Davies, 22 How., ( U. S.), 364 (at 378),* and the cases cited *supra* in this brief.

ARGUMENT OF COUNSEL FOR DEFENDANTS, ON DEMURRER.

It is alleged as the ground for this demurrer that the Delaware Electric Railway Company has no existence because the merger did not take place until after the tenth day of June, A. D. 1897, at which time the new Constitution of the State went into effect, and as therefore being prohibited by *Section 1, Article 9, of that Constitution,* which provides that " No corporation shall be hereafter created, amended, renewed or revived by special act, but only by or under general law."

It is submitted that such was not the intention of the framers of the Constitution, and that the provision in question has no application.

It is a fundamental principle of the law of corporations, growing out of the nature of the corporation itself, which has been defined to be a portion of the royal prerogative in the hands of a subject, that by the common law a corporation could not be created without the king's consent, in other words, the consent of the sovereign power, a portion of which was thus delegated to the citizen.

*2 Blackstone's Com., 472, et seq.*

So in this country it has uniformly been held that a corporation can only be created by the legislature, in which, subject to constitutional restriction, all of the sovereign legislative power of the people is vested.

*Thompson on Corporations, Secs. 35, 219, 315.*

That the Legislature cannot delegate its power except where and when authorized by the Constitution of the State, is established in this State.

*Rice vs. Foster, 4 Harr., 479. See also Morawetz on Corporations, Sec. 15.*

The Constitution of a State, unlike the Constitution of the United States, is, as applied to the legislative branch of the government, a limitation of sovereign power. By the Constitution the people of the State have divested themselves of all of their sov-

ereignty, and vested it in the three departments of the government —the legislative, the executive and the judicial.

*Rice vs. Foster, Supra, 488.*

As the making of laws is the highest act of sovereignty (and it is manifest that the creation of a corporation belongs to the law-making branch), it may therefore be said that the supreme power of the State resides in the Legislature.

*6 Am. & Eng. Ency. of Law (2nd Edition), 933, 934,* and cases in notes.

When, therefore, the Constitution of the State provided (*Article 2, Section 1*) that " the legislative power of this State shall be vested in a General Assembly, which shall consist," etc., it gave to that General Assembly full legislative power, excepting as therein or otherwise restrained. It follows of necessity therefore that any provisions in our Constitution prescribing what may not be done by the Legislature, are to be construed as limitations upon this supreme legislative power, and can only be construed as such limitations from the very necessity of the case.

It cannot be doubted, therefore, that previous to the tenth day of June, A. D., 1897, the Legislature of the State of Delaware had the right and ample power to provide that the Dover and Milford Railway Company should have among the other powers given to it *at the time of its creation* the power to merge with any other corporation, and the power in such other corporation to merge with it. It will be remembered that this act was re-enacted on the twenty-sixth day of May, A. D. 1897.—(*Volume 20, Delaware Laws, 581*). So far then as legislative sanction was required for the consolidation —and it is not denied that such sanction is necessary—the Legislature had given it, had done everything which the Legislature could do, or was called upon to do, previous to the tenth day of June, A. D. 1897. It must therefore be manifest that the right to consolidate already existing, requiring no further action by the Legislature by way of creation, amendment, renewal or revival, cannot be affected by a constitutional limitation upon future action by the Legislature.

It is said, however, that by consolidation a new corporation is formed having the franchises of the old corporations, and that the old corporations are extinct.

It is submitted that this is in no sense the " creation " of a new corporation, as contemplated by the Constitution. *No legislative sanction was necessary ; the creative power was not called upon to create or recreate anything.* It was simply, to use the language of some of the cases, the flowing together of two streams, and the formation thereby of a stream composed of both.

*Thompson on Corporations, Secs. 400, 8241.*

As said by the Court in *Rice vs. Foster, supra page 491,* "A law when passed by the Legislature is a complete, positive and absolute law in itself ; deriving its authority from the Legislature, and not depending for the enactment of its provisions upon any other tribunal, body or persons. It may be limited to expire at a certain period ; or not to go into operation until a future time, or the happening of a contingency, or some future event, or until some condition be performed. * * * All such laws are complete and positive in themselves when they pass from the hands of the Legislature, and are not to become laws by the creative power of other persons."

Again the purpose of the provisions of Article 9 of the new Constitution must be apparent. Previous to its adoption corporations had been created, their charters amended, renewed and revived by special act. No corporation had ever created, amended, renewed or revived itself or any other corporation. There was no abuse of the latter kind to be remedied, and certainly no necessity for a constitutional provision to prohibit that which could not have been done theretofore or thereafter by any possibility. The evil to be remedied in the opinion of the framers of the Constitution was an evil theretofore existing, namely, the creation, etc., of corporations by the Legislature under special act. The Legislature had been the offender, not the corporation.

Such provisions as the one found in our Constitution are not

uncommon. Their purpose is " to inaugurate the policy of placing of corporations of the same kind upon a perfect equality as to all future grants of power."

*Atchinson vs. Co., 15 Ohio St., 21, 35 ; San Francisco vs. Water Works, 48 Cal., 493, 518.*

It was not intended that they should have any retroactive force, for not only has the convention not so provided, which it would have been necessary for it to have done had it so intended— *State vs. McCoy, et al., 2 Marvel, 376 ; 7 Am. & Eng. Ency. of Law, 917,* and cases cited in note; *Exparte Burk, 59 Cal., 6*— but on the contrary by *Section 4, of Article 9,* relating to the very same subject matter, it was provided that the rights and privileges, etc., of corporate bodies, except as herein otherwise provided, "shall remain as if the Constitution of this State had not been altered."

The Legislature had given the right to the Dover and Milford Railway Company to consolidate. This right could be reduced to possession by the corporation at any time—and while it may be admitted that the right was subject to be withdrawn by the Legislature, or by the Constitutional Convention, before the corporation had availed itself of the privilege, it would require something more than a prohibition upon future legislative action to withdraw such right.

Likewise in the *Schedule to the Constitution, Section 18,* it is provided that all laws of this State existing at the time of the taking effect of the Constitution, and not inconsistent with it, shall remain in force, except so far as they shall be altered by future laws.

LORE, C. J.:—The main question raised by this demurrer, is whether the "Delaware Electric Railway Co.," was organized and created in violation of *Section 1, Article 9, of the Constitution,* promulgated June 10, 1897 ; which provides that, "No corporation shall hereafter be created, renewed or revived, by special act, but only by or under general law."

It is conceded that the Delaware Electric Railway Company,

was formed by the union of the Dover and Milford Railway Company, and the Dover and Bay Shore Railway Company, under the terms of their special acts of incorporation ; which acts were passed before June 10, 1897, and were in force at that date; but that all of the said corporations have been organized since that date.

Was such organization within the inhibition of the Constitution ?

This question was raised in the former argument in this case, and has been quite fully discussed in the argument just closed. After such examination and thought as we have been enabled to give to this subject in the short intervening time, we have reached the conclusion that such organization and creation is not within the constitutional inhibition.

Neither the reasoning nor the conclusions in the case of the *State vs. Dawson, 16 Ind., 40,* commend themselves to our judgment. The case bears upon its face, evidence of an effort to meet, what the Court designates as " the policy that induced the prohibition." What that policy may have been does not appear.

The reasoning in the case of the *State vs. Roosa, 11 Ohio, 16,* which seems to differ from the Indiana case but little in principle but somewhat in the language of the respective constitutions, is much more satisfactory.

To adopt the construction of our Constitution asked for by the State would be to annul every living charter upon our statute books, which had been passed June 10, 1897, but under which no corporation had been had at that time; and that too by implication, in the absence of any express language to that effect.

Such a construction, again, is met by the well settled legal principle, that retroactive effect will never be given to any law unless such intent be clearly expressed. This doctrine has been again and again announced in our own courts. Such construction will not be given, in the language of *5 Hill, 221,* " Unless in the latest act is plainly indicated an intention to abrogate it."

Again, " If the acts may well subsist together, the prior act is

not repealed." Is it in anywise shown to the satisfaction of the Court in this case, that these prior charters with all their privileges, "may not well subsist" with the provisions of *Section 1, Article 9 of the Constitution.* We think not.

For these and other reasons which we deem not necessary to specify, we conclude that the organization and creation of this company, as disclosed upon the plea in this case, is not within the inhibition of the Constitution.

We have heretofore passed upon the power and authority of these two corporations to merge; and see no reason to reverse our ruling on that point.

The demurrer is therefore overruled.

The counsel for the State filed replications to defendant's pleas.

The defendants thereupon joined issue and the further hearing of the case was postponed on the application of the State until December 18th, on the ground of the absence of a material witness for the State. Mr. Hilles, on behalf of the defendants, on the above mentioned date asked leave to amend his pleas by inserting in place of the word "first" (being the last word of the fourteenth line on page 3 thereof) the word "fourth;" so that that part of the plea would allege that 100 shares of the capital stock of the Dover and Milford Railway Company had been subscribed and ten thousand dollars had been paid in cash "on or before the *first* day of November, A. D. 1897."

Counsel for the State opposed the amendment at this stage of the proceedings and claimed that if allowed it should be on terms

LORE, C. J.:—We will allow the amendment and without terms. Wherever the date the "first" of November appears let it be changed to "fourth" of November, in both the pleas and the replications.

How will you have the issues tried?

*Mr. Hilles:*—We would like to have a jury.

LORE, C. J.:—At the request of counsel for the respondent it is ordered by the Court that the issues of fact raised by the pleadings in this case be tried by a jury at the bar of this county.

*Mr. Hilles:*—The burden being upon us, as I understand, to show the corporation, I take it we should open and close to the jury.

LORE, C. J.:—You justify under a charter. The burden is upon you.

During the progress of the trial the following questions were objected to and ruled upon :

*Mr. Hilles* asked the witness John D. Hawkins, whether any money was paid in his presence at the meeting of the commissioners held in the witness' office on June 1, 1897, as subscription to the capital stock of the Dover and Milford Railway Company, and if so, how much.—Objected to by counsel for the State on the ground that the commissioners themselves are the ones who should be called to prove that fact.

LORE, C. J.:—We think this is admissible.

A.    Yes sir, there were at that meeting two subscribers to the capital stock.    One was Joseph Raspin and the other was myself. The other company having failed of its purpose on account of there being no payment on its capital stock, I prepared myself that day before the meeting to pay it in.

Q.    What did you do in pursuance of that preparation ?

Objected to by counsel for the State on the ground that if there is a book kept, the book is the best evidence of the payment

of money, and the testimony sought to be introduced would be but secondary evidence.

LORE, C. J.:—The production of books is one mode of proving it; this is another.

A.   It was either ten thousand dollars or ten thousand five hundred dollars.

Q.   On the bottom of the loose page which is in evidence, I notice a pencil memorandam,—in whose handwriting is that memorandum?

A.   That is in my handwriting.

Q.   When was that made?

A.   On the afternoon of the day of the meeting of the commissioners—sometimes here called incorporators.

Q.   What number of shares of stock of the Dover and Milford Railway Company had been subscribed for as appears on that subscription list?

Objected to by counsel for State as not the best evidence; that the books admitted in evidence show the amount of the subscription to be one hundred shares and the defendants are seeking to vary that by parol testimony.—*Cook on Corporations, Vol. 1, Sec. 65.*

LORE, C. J.:—We understand that the defendants propose now to show by parol testimony an additional subscription necessary to cover the $10,000 required by the act to be paid in before organization.

*Mr. Hilles:*—We propose to prove that there was a mistake in putting down the subscription for one hundred shares of stock,

when as a matter of fact two hundred shares of stock were subscribed and paid for.

LORE, C. J.:—We understand the proposition of the defendant is to prove by parol evidence that there were enough shares of stock subscribed to cover this ten thousand dollar payment.

You will notice that the first section of the act of 1895 provides for a suitable book for the subscriptions to the capital stock of the Dover and Milford Railway Company. That necessarily contemplates that those subscriptions shall be in a book provided for that purpose and of necessity the subscriptions must be in writing. In Section 2 of the act renewing the charter is this language : " that before any organization shall be effected as provided by the second section of the original act" (that is, the act of 1895), " at least $10,000 of the capital stock subscriptions therein authorized shall be fully paid in cash."

Our judgment is that this $10,000 must be paid upon subscriptions of the capital stock therein authorized and that these subscriptions must be made in the manner prescribed by the charter, in a subscription book for that purpose. You have produced here the subscription book, or what purports to be the same, and it shows upon its face signed by the parties who made them, subscriptions for 100 shares which at the par value of $50 per share would amount to $5000. You seek to vary that and establish by parol that that is a mistake.

That is open to two objections : It is attempting to prove a part of the subscriptions to the capital stock of this corporation by parol, when the charter prescribes that it shall be subscribed in a book for that purpose. The second objection is that you are seeking to vary written statements over the signatures of these respective parties by parol testimony. We do not think it is permissible. There must be in writing upon the book (or something equivalent to it) sufficient to have enabled the defendants to have paid on those subscriptions ten thousand dollars prior to the organization. We

do not mean any particular book but it must be in writing,—something coming within the provisions of the charter.

Counsel for defendants thereupon stated that as it would be useless, under the ruling of the Court, to put in the remainder of their testimony, they would press the case no further.

*Edward Ridgely :*—I now move the Court to instruct the jury to bring in a verdict for the State.

LORE, C. J.:—Gentlemen of the jury: Under the rulings of the Court and statements made by counsel for the respondents in this case, we instruct you that you are to return your verdict for the State of Delaware, at the relation of the Attorney-General in this case. You can only render a verdict for nominal damages.

Verdict for the State for six cents and costs.

Whereupon the Court rendered the following judgment:

"And now to wit, this eighteenth day of December, A. D., 1899, thirty jurors having been by the sheriff of Kent County duly summoned, returned and empaneled, out of which number a jury, to wit," (names of jurors here follow) " being duly drawn and after all cause of challenge allowed, did appear at the bar and being duly sworn and affirmed to well and truly try the issues joined and a true verdict give according to the evidence, and upon their oaths and affirmations, respectively, do say that they find for the State of Delaware, on the relation of Robert C. White, Attorney-General and assess the damages at six (6) cents, costs, besides, etc.

" Whereupon all and singular the premises being seen and fully understood by the Court here it is considered and adjudged by the said Court here that the said " (naming the defendants) " do not in any manner intermeddle with or concern themselves with, in or about the liberties, privileges, rights, powers or franchises aforesaid, that is to say, as officers, directors or stockholders of ' Delaware

Electric Railway Company,' but that they and each of them be absolutely ousted, forejudged and excluded from ever exercising or using the same or any of them for the future; and that they the said" (naming the defendants) " in order to satisfy the said State for and on account of the usurpation aforesaid be taken, etc.; and that the said State of Delaware, do recover against the said Joseph Hancock, Franklin Temple, W. W. Power, Henry Reichart, E. C. Hancock, John D. Hawkins, Howard M. Wilkinson, Lucius P. Campbell, Theodore Townsend, the sum of six cents damages and ———— dollars for its costs, by it laid out and expended in carrying on its suit in this behalf, and that it, the said State of Delaware, have execution of this judgment.

"CHAS. B. LORE, C. J."